UNITED STATES, Appellee,

v.

Charles R. REYNOLDS, Private U.S. Army, Appellant.

No. 48,424.

CM 438780.

U.S. Court of Military Appeals.

May 28, 1985.

For Appellant: *Major Edwin D. Selby* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel William P. Heaston, Captain Gunther O. Carrle* (on brief).

For Appellee: *Captain Kathy J.M. Peluso* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Captain Thomas E. Booth* and *Captain Debbie J. O'Bryan* (on brief); *Lieutenant Colonel Adrian J. Gravelle* and *Major Larry D. Williams.*

*Opinion of the Court*

COX, Judge:

The granted issue in this case questions whether appellant's pleas were provident. 18 M.J. 4 (C.M.R.1984). Deciding that they were, we affirm.

I

Appellant pleaded guilty at a general court-martial to conspiracy to commit larceny, robbery, wrongful possession of some marihuana, and impersonating a military policeman with intent to facilitate a robbery, in violation of Articles 81, 122, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 922, and 934, respectively.[1] The robbery specification, as modified by the Court of Military Review's opinion,[2] recites that "appellant did, at Fort Knox, Kentucky ... by means of force and violence, steal from the person of ... [the victim] ... against his will, United States Currency of a value of about $80.00, the property of the said" victim.

During the providence inquiry, the military judge explained to appellant the elements of the offense of robbery, including "that the taking [of the currency] was by means of force and violence." Appellant acknowledged that he understood these elements and that he committed each of them. He further explained to the military judge how he and a friend of his drove the victim (a basic trainee who was previously unknown to both of them) to a barracks building for the purpose of purchasing marihuana for the trainee. Appellant took the trainee's money and went into the barracks to acquire the drugs. As he received the money from the victim, appellant noticed a "wad" of money in the victim's wallet. In-

side the barracks, appellant and the drug source hatched a scheme to steal the rest of the victim's money.

Returning to the car with the drugs, appellant and the source first got into the car [it was appellant's car]. Then the source announced: "All right, everybody out of the car, this is a bust." Appellant played the role of a military policeman (hence the impersonating charge), and the victim was placed "on the car, something like this, sir, he wasn't really [in a] spread-eagled position." Appellant then "patted" the victim down in the manner of a military policeman effecting an apprehension. In the process, he managed to lift the victim's wallet, remove $80.00, and return the wallet to the victim's pocket, without the victim's ever realizing that it had been removed. Afterward, appellant and his partners dropped the victim off at a bowling alley, keeping, in addition to the $80.00, the marihuana and the $40.00 the victim had paid for it. A stipulation of fact, prepared in conjunction with the pretrial agreement, corroborated appellant's trial rendition.

II

Appellant contends that his description of the incident was so inconsistent with findings of guilty of robbery as to render his pleas improvident. In particular, he argues that the "patting" which he described was insufficient "force and violence" to constitute robbery. Thus, he maintains, he was guilty of nothing more than larceny, a crime which carries a considerably lesser penalty.

There is no question of appellant's having admitted his guilt to each and every element of the offense. Our focus, then, is whether he subsequently set up any mat-

---

1. The officer panel sentenced him to forfeit all pay and allowances for 1 year, to be confined at hard labor for 1 year, and to be reduced to the grade of Private E-1. Pursuant to a pretrial agreement, the convening authority approved the sentence, but suspended six months confinement at hard labor in excess of 6 months and forfeitures in excess of $275.00 pay per month for 1 year. The Court of Military Review modified the findings of the conspiracy and robbery specifications to the extent that they

found that a lesser dollar amount was taken. As this lesser amount affected the maximum sentence, the court reassessed the sentence and approved only so much of the sentence as provided for confinement at hard labor for 9 months, forfeiture of $275.00 pay per month for 9 months, and reduction to the grade of Private E-1.

2. *See* n. 1, *supra*.

ters which were inconsistent with those original admissions. Article 45(a), UCMJ, 10 U.S.C. § 845(a).

■ Article 122 provides:

Any person subject to this chapter who with intent to steal takes anything of value from the person or in the presence of another, against his will, *by means of force or violence* or fear of immediate or future injury to his person or property or to the person or property of a relative or member of his family *or of anyone in his company at the time of the robbery,* is guilty of robbery and shall be punished as a court-martial may direct.

(Emphasis added.) As appellant was charged with and pleaded guilty to robbery by "force and violence," we do not consider that portion of Article 122 which deals with fear of injury to person or property.

The Manual for Courts-Martial explains robbery by force and violence as follows:

For a robbery to be committed by force or violence, there must be actual force or violence to the person, preceding or accompanying the taking against his will, and it is immaterial that there is no fear engendered in the victim. Any amount of force is enough to constitute robbery if the force overcomes the actual resistance of the person robbed, or puts him in such a position that he makes no resistance, or suffices to overcome the resistance offered by a chain or other fastening by which the article is attached to the person. If an article is merely snatched from the hand of another or a pocket is picked by stealth and no other force is used and the owner is not put in fear, the offense is not robbery. But if resistance is overcome in snatching the article, there is sufficient violence, as when the earring of a woman is torn from her ear or a hair ornament entangled in her hair is snatched away. *There is sufficient violence when a person's attention is diverted by his being jostled by a confederate of a pickpocket, who is thus enabled to steal the person's watch, even though the person had no knowledge of the act* ; or when a

man is knocked insensible and his pockets rifled; or when a guard steals property from the person of a prisoner in his charge after handcuffing him on the pretext of preventing his escape.

Para. 201, Manual for Courts-Martial, United States, 1969 (Revised edition) (emphasis added).

■ It has long been held that the mere pretext of legal authority does not constitute force and violence for the purpose of robbery. *People v. Romo,* 85 Ill.App.3d 886, 41 Ill.Dec. 163, 407 N.E.2d 661 (1980); *Montsdoca v. State,* 84 Fla. 82, 93 So. 157 (1922); *State v. Parsons,* 44 Wash. 299, 87 P. 349 (Wash.1906); *Bussey v. State,* 71 Ga. 100 (1883). *See Tones v. State,* 48 Tex.Cr.R. 363, 88 S.W. 217 (1905). Thus, the fact that appellant pretended to be a military policeman by itself would not suffice to make appellant liable for robbery. Further, it is well established that picking a victim's pocket by stealth is not a taking by force or violence, so it is not robbery. *State v. Miguel,* 125 Ariz. 538, 611 P.2d 125 (Ariz.App. 1980); *State v. Cohen,* 60 Ohio App.2d 182, 396 N.E.2d 235 (1978); *Adams v. State,* 295 So.2d 114 (Fla. App. 1974); *Turner v. United States,* 16 F.2d 535 (App. D.C.1926); *Hall v. People,* 171 Ill. 540, 49 N.E. 495 (1898); *Brennon v. State,* 25 Ind. 403 (1865); Annot., 8 A.L.R. 359 (1920); para. 201, Manual, *supra.*

■ However, the jostling of a victim by a pickpocket or his confederate for the purpose of diverting the victim's attention can constitute sufficient force to make out robbery. *State v. Segura,* 81 N.M. 673, 472 P.2d 387 (N.M. App.), *cert. denied,* 81 N.M. 669, 472 P.2d 383 (1970); W. LaFave & A. Scott, *Handbook on Criminal Law* 697 (1972), citing *Snyder v. Commonwealth,* 55 S.W. 679 (Ky. Ct. App. 1900); *State v. Gorham,* 55 N.H. 152 (1875); and *Mahoney v. People,* 3 Hun (N.Y.) 202 (Sup. Ct. 1874), *aff'd,* 59 N.Y. 659 (1875); *see* 67 Am.Jur. *Robbery* § 27 (1973) (citing *Duluth Street R. Co. v. Fidelity & D. Co.,* 136 Minn. 299, 161 N.W. 595 (1917) ); para. 201, Manual, *supra. See also Seymour v.*

*State,* 15 Ind. 288 (1860); *Commonwealth v. Snelling,* 4 Binn (Pa.) 379 (1812).

█ Here, the force exerted by appellant and his confederate obviously went beyond that needed simply to lift and remove the property, because the victim suddenly found himself stretched out on an automobile and being gone over in the manner of one under apprehension. Moreover, the "patting" was specifically designed to divert the victim's attention from his wallet, so as to prevent its removal being noticed.[3] Under the foregoing authorities, appellant's admissions during the providence inquiry were sufficient to establish his culpability for the crime of robbery. Nothing in his explanation was inconsistent with that conclusion, *United States v. Logan,* 22 U.S. C.M.A. 349, 47 C.M.R. 1 (C.M.R.1973), and it follows that his pleas of guilty to robbery were provident.

Accordingly, the decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge FLETCHER did not participate.

---

3. Appellant's explanation makes it unmistakably clear that his actions in "patting down" the victim were designed to divert the victim's attention from appellant's true purpose, namely:

[A]nd I went around, you know, and patted him on his back pockets and everything, you know, so that he wouldn't know that I was taking his wallet out, sort of like tricking him.